IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TOBACCO COMPANY, L.P., <br> NORTH ATLANTIC OPERATING <br> COMPANY, INC. <br> 5201 INTERCHANGE WAY <br> LOUISVILLE, KY 40229 <br><br> Plaintiffs, and Applicants in Consolidated <br> Opposition No. 91203352 <br><br> v. <br><br> NORMAN F. SHARP <br> 1304 KEY DRIVE <br> ALEXANDRIA, VA 22302 <br><br> CRAIG WILLIAMSON, PRESIDENT <br> CIGAR ASSOCIATION OF AMERICA INC. <br> 1100 G STREET, NW, SUITE 1050 <br> WASHINGTON, DC 20005 <br><br> CIGAR ASSOCIATION OF AMERICA, INC. <br> 1100 G STREET, NW, SUITE 1050 <br> WASHINGTON, DC 20005 <br><br> Third Party Deponents In Consolidated <br> Opposition No. 91203352 Before The <br> United States Trademark Trial And <br> Appeal Board | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## APPLICATION FOR ISSUANCE OF SUBPOENAS
## PURSUANT TO 35 U.S.C. § 24

National Tobacco Company, L.P. ("NTC") and North Atlantic Operating Company, Inc.

("NAOC"), Applicants in Opposition No. 91203352 (the "Opposition"), styled *Top Tobacco, L.P.*

*v. National Tobacco Company, L.P. and North Atlantic Operating Company, Inc.*, currently

pending before the United States Trademark Trial and Appeal Board (the "Board"), pursuant to 35

U.S.C. § 24 hereby apply for the issuance of subpoenas in support of the Board in the Opposition as follows:

1. Subpoena *duces tecum* for Norman F. Sharp ("Sharp Subpoena"), in the form attached as Exhibit A, to produce documents on April 12, 2016, pursuant to the Notice of Deposition and Amended Notice of Deposition of Norman F. Sharp attached as Exhibits B and C;

2. Subpoena *duces tecum* for Craig Williamson, President of the Cigar Association of America, Inc. ("Willliamson Subpoena"), in the form attached as Exhibit D to appear and produce documents at a deposition to be noticed for April 12, 2016, pursuant to the Notice of Service of Subpoena attached as Exhibit E;

3. Subpoena *duces tecum* for the 30(b)(6) deposition of the Cigar Association of America ("CAA Subpoena"), in the form attached hereto as Exhibit F, to appear and produce documents at a deposition to be noticed for April 12, 2016, pursuant to the Notice of Service of Subpoena attached as Exhibit G. The parties to the Opposition, and their attorneys, are as follows:

| | |
|---|---|
| Opposer:<br>Represented By: | Top Tobacco, L.P.<br>Antony J. McShane<br>Katherine D. Nye<br>NEAL, GERBER & EISENBERG<br>Two North LaSalle Street<br>Suite 1700<br>Chicago, Illinois 60602-3801 |
| Applicants:<br><br>Represented By: | National Tobacco Company, L.P., and North Atlantic Operating Company, Inc.<br>James William Woodlee (D.C. Bar No. 996877)<br>KLEINFELD, KAPLAN AND BECKER LLP<br>1850 M Street, NW, Suite 800<br>Washington, DC 20036<br><br>and<br><br>Amy B. Berge |

Elizabeth G. Powell
Joseph R. Dages
MIDDLETON REUTLINGER
401 South Fourth Street, Suite 2600
Louisville, Kentucky 40202

The issuance of the subpoenas requested herein is authorized by 35 U.S.C. § 24, which states, in relevant part:

> The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent and Trademark Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent and Trademark Office.

Mr. Sharp, the former President of the CAA, has been designated a testifying expert witness on behalf of the Opposer, Top Tobacco, L.P. ("Top"), in the Opposition, and the Sharp Subpoena would require him to produce documents comprising or relating to matters referenced in his Expert Report dated March 14, 2016, attached as Exhibit H. Upon information and belief, Mr. Sharp resides in Alexandria, Virginia, but the parties have agreed to proceed with his deposition in Chicago on April 13, 2016.[1]

Upon information and belief, Mr. Williamson is the current President of the CAA in Washington, DC. Attached as Exhibit I is a printout from the CAA website identifying Mr. Williamson as the CAA's current president and listing the CAA's current address as within the District of Columbia. The Williamson Subpoena and the CAA Subpoena would require both to appear and produce documents comprising or relating to matters referenced in Mr. Sharp's Expert Report, relating to NTC and NAOC and their products at issue in the Opposition.

Notice of this Application shall be given to Top by sending through the United States Mail and electronic mail a true and correct copy of this Application, and, once issued, the subpoenas

---

[1] Upon information and belief, the Sharp Subpoena would require Mr. Sharp to appear to produce documents within 100 miles of his residence consistent with Fed. R. Civ. Pro. 45(c).

will be served on Norman F. Sharp, Craig Williamson, and the CAA.  Accordingly, NTC and NAOC request that the Clerk of this Court issue each of the subpoenas requested, directing the parties to produce documents and appear as indicated on the subpoenas.  A proposed Order is attached as Exhibit J.

        Dated: April 6, 2016

                    Respectfully submitted,

                    *James William Woodlee*

                    James William Woodlee (D.C. Bar No. 996877)
                    KLEINFELD, KAPLAN AND BECKER LLP
                    1850 M Street, NW, Suite 800
                    Washington, DC  20036
                    202-223-5120
                    wwoodlee@kkblaw.com

                    and

                    /s/Amy B. Berge

                    Amy B. Berge
                    Elizabeth G. Powell
                    Joseph R. Dages
                    MIDDLETON REUTLINGER
                    401 South Fourth Street, Suite 2600
                    Louisville, Kentucky 40202
                    COUNSEL FOR APPLICANTS NATIONAL TOBACCO COMPANY, LP AND NORTH ATLANTIC OPERATING COMPANY, INC.
                    502-584-1135
                    aberge@middletonlaw.com
                    epowell@middletonlaw.com

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing Application for Issuance of Subpoenas Pursuant to 35 U.S.C. § 24 was served via U.S. Mail, postage prepaid, upon Antony J. McShane and Katherine D. Nye, NEAL, GERBER & EISENBERG, Two North LaSalle Street, Suite 1700, Chicago, Illinois 60602-3801, on this the 6th day of April, 2016.

_____
Counsel for Applicants

# EXHIBIT A

AO88  (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

National Tobacco Co., L.P., et al.,

**SUBPOENA IN A CIVIL CASE**

V.

Norman F. Sharp

Case Number:[1]

TO:  Norman F. Sharp
1304 Key Drive, Alexandria, VA 22302

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A attached hereto.

| PLACE  James William Woodlee, Kleinfeld, Kaplan and Becker, LLP  1850 M Street, NW, Suite 800, Washington, DC 20036 | DATE AND TIME  4/12/2016 9:30 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT TO

# SHARP SUBPOENA

ATTACHMENT TO SUBPOENA DUCES TECUM

EXHIBIT A

## INSTRUCTIONS AND DEFINITIONS

For purposes of the document requests, these Instructions and Definitions apply:

A.     If any responsive document requested hereunder is withheld under a claim of privilege, please produce a privilege log identifying: (a) the type of document withheld; (b) the author(s) of such documents; (c) the recipient(s) of such document; (d) the date of the document; (e) the current location of the document; and (f) the privilege claimed.

B.     The term "document" is used in a comprehensive sense and includes, without limiting the generality of its meaning, all written, typed, printed, recorded, digital, computer generated and/or retained, transcribed, filed, or graphic materials however produced, copied, or reproduced of any kind and description whether denominated as letters, correspondence, e-mail, telegrams, notes, recordings, contracts, reports, inter- or intra-office or personal memoranda (including those of meetings, conferences, and telephone communications), financial statements and records, balance sheets, profit and loss statements, bank statements, cancelled checks, property records, inventories, tax returns, tax worksheets, travel records, stenographic notes, Excel® or other computer spreadsheets, handwritten notes, diary or journal entries, desk entries, appointment books, photographs, motion pictures, computer printouts, contents of computer hard drives or disks or compact disks or flash drives or similar media, worksheets, catalogs, bills, requisitions, minute books, notebooks, files, slides, tapes, photostatic copies, negatives, microfilm, advertisements, fax or facsimile records, and other writings or physical images or depictions whatsoever in their nature.

## PRODUCTION OF DOCUMENTS

1.     Please provide a full and complete copy of any and all documents comprising or relating to the Cigar Association of America, Inc., its policies, procedures, and communications relating to the sale of cigar wraps or blunt wraps.

2.     Please provide a full and complete copy of any and all documents comprising or relating to the Cigar Association of America, Inc. relating to National Tobacco Company, L.P, including without limitation documents relating to National Tobacco Company, L.P.'s admission, membership, or status within the Cigar Association of America, Inc.

# EXHIBIT B

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| Top Tobacco, L.P., | ) | |
| | ) | |
| Opposer | ) | |
| | ) | Opposition No. 91203352 **(Parent Case)** |
| v. | ) | |
| | ) | |
| National Tobacco Company, L.P., | ) | |
| | ) | |
| Applicant. | ) | |
| —————————————————— | ) | |
| Top Tobacco, L.P., | ) | |
| | ) | |
| Opposer | ) | |
| | ) | Opposition No. 91210176 |
| v. | ) | |
| | ) | |
| North Atlantic Operating Company, Inc., | ) | |
| | ) | |
| Applicant. | ) | |
| —————————————————— | ) | |

**NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE THAT Applicants, National Tobacco Company, L.P., and North Atlantic Operating Company, Inc., pursuant to Rule 30 of the Federal Rules of Civil Procedure, will take the deposition of Norman F. Sharp at the offices of NEAL, GERBER & EISENBERG, Two North LaSalle Street, Suite 1700, Chicago, Illinois 60602-3801, before a duly-qualified notary public or other person authorized by law to record depositions, beginning at 9:00 a.m. on April 13, 2016, and continuing thereafter until completed.

Dated: March 28, 2016

Respectfully submitted,

Amy B. Berge
Elizabeth G. Powell
Joseph R. Dages
MIDDLETON REUTLINGER
401 South Fourth Street, Suite 2600
Louisville, Kentucky 40202
COUNSEL FOR APPLICANTS NATIONAL
TOBACCO COMPANY, LP AND NORTH
ATLANTIC OPERATING COMPANY, INC.
502-584-1135
aberge@middletonlaw.com
epowell@middletonlaw.com

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing Notice of Deposition was served via U.S. Mail, postage prepaid, upon Antony J. McShane, NEAL, GERBER & EISENBERG, Two North LaSalle Street, Suite 1700, Chicago, Illinois 60602-3801, on this the 28th day of March, 2016.

Counsel for Applicants

2

# EXHIBIT C

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

Top Tobacco, L.P.,                                       )
                                                         )
      Opposer                           )
                                                         )   Opposition No. 91203352 **(Parent Case)**
      v.                                )
                                                         )
National Tobacco Company, L.P.,                          )
                                                         )
      Applicant.                        )
_____                      )

Top Tobacco, L.P.,                                       )
                                                         )
      Opposer                           )
                                                         )   Opposition No. 91210176
      v.                                )
                                                         )
North Atlantic Operating Company, Inc.,                  )
                                                         )
      Applicant.                        )
_____                      )


## AMENDED NOTICE OF DEPOSITION AND NOTICE OF SERVICE OF SUBPOENA

PLEASE TAKE NOTICE THAT Applicants, National Tobacco Company, L.P., and North Atlantic Operating Company, Inc., pursuant to Rule 30 of the Federal Rules of Civil Procedure, will take the deposition of Norman F. Sharp at the offices of NEAL, GERBER & EISENBERG, Two North LaSalle Street, Suite 1700, Chicago, Illinois 60602-3801, before a duly-qualified notary public or other person authorized by law to record depositions, beginning at 9:00 a.m. on April 13, 2016, and continuing thereafter until completed.

PLEASE TAKE FURTHER NOTICE THAT Applicants, National Tobacco Company, L.P., and North Atlantic Operating Company, Inc., pursuant to Rule 45 of the Federal Rules of Civil Procedure, will serve Norman F. Sharp with the Subpoena Duces Tecum attached hereto as

Exhibit A, commanding him to produce certain documents identified therein to James William Woodlee at the offices of KLEINFELD, KAPLAN AND BECKER, LLP, 1850 M Street, NW, Suite 800, Washington, DC 20036, on or before April 12, 2016, at 9:30 a.m.

Dated: April __, 2016

Respectfully submitted,

_____

Amy B. Berge
Elizabeth G. Powell
Joseph R. Dages
MIDDLETON REUTLINGER
401 South Fourth Street, Suite 2600
Louisville, Kentucky 40202
COUNSEL FOR APPLICANTS NATIONAL
TOBACCO COMPANY, LP AND NORTH
ATLANTIC OPERATING COMPANY, INC.
502-584-1135
aberge@middletonlaw.com
epowell@middletonlaw.com
jdages@middletonlaw.com

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing Amended Notice of Deposition and Notice of Service of Subpoena was served via U.S. Mail, postage prepaid, upon Antony J. McShane, NEAL, GERBER & EISENBERG, Two North LaSalle Street, Suite 1700, Chicago, Illinois 60602-3801, on this the 28th day of March, 2016.

_____

Counsel for Applicants

2

# EXHIBIT D

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

National Tobacco Co., L.P., et al.,

**SUBPOENA IN A CIVIL CASE**

V.

Craig Williamson

Case Number:[1]

TO:  Craig Williamson
President, Cigar Association of America, Inc.
1100 G Street, NW, Suite 1050, Washington, DC 20005

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    James William Woodlee, Kleinfeld, Kaplan and Becker, LLP  1850 M Street, NW, Suite 800, Washington DC 20036 | DATE AND TIME  4/12/2016 9:30 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A attached hereto.

| PLACE    James William Woodlee, Kleinfeld, Kaplan and Becker, LLP  1850 M Street, NW, Suite 800, Washington, DC 20036 | DATE AND TIME  4/12/2016 9:30 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT TO

# WILLIAMSON SUBPOENA

ATTACHMENT TO SUBPOENA DUCES TECUM

EXHIBIT A

## INSTRUCTIONS AND DEFINITIONS

For purposes of the document requests, these Instructions and Definitions apply:

A.      If any responsive document requested hereunder is withheld under a claim of privilege, please produce a privilege log identifying:  (a) the type of document withheld; (b) the author(s) of such documents; (c) the recipient(s) of such document; (d) the date of the document; (e) the current location of the document; and (f) the privilege claimed.

B.      The term "document" is used in a comprehensive sense and includes, without limiting the generality of its meaning, all written, typed, printed, recorded, digital, computer generated and/or retained, transcribed, filed, or graphic materials however produced, copied, or reproduced of any kind and description whether denominated as letters, correspondence, e-mail, telegrams, notes, recordings, contracts, reports, inter- or intra-office or personal memoranda (including those of meetings, conferences, and telephone communications), financial statements and records, balance sheets, profit and loss statements, bank statements, cancelled checks, property records, inventories, tax returns, tax worksheets, travel records, stenographic notes, Excel® or other computer spreadsheets, handwritten notes, diary or journal entries, desk entries, appointment books, photographs, motion pictures, computer printouts, contents of computer hard drives or disks or compact disks or flash drives or similar media, worksheets, catalogs, bills, requisitions, minute books, notebooks, files, slides, tapes, photostatic copies, negatives, microfilm, advertisements, fax or facsimile records, and other writings or physical images or depictions whatsoever in their nature.

## PRODUCTION OF DOCUMENTS

1.      Please provide a full and complete copy of any and all documents comprising or relating to the Cigar Association of America, Inc., its policies, procedures, and communications relating to the sale of cigar wraps or blunt wraps.

2.      Please provide a full and complete copy of any and all documents comprising or relating to the Cigar Association of America, Inc. relating to National Tobacco Company, L.P, including without limitation documents relating to National Tobacco Company, L.P.'s admission, membership, or status within the Cigar Association of America, Inc.

# EXHIBIT E

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| Top Tobacco, L.P., | ) | |
| | ) | |
| Opposer | ) | |
| | ) | Opposition No. 91203352 **(Parent Case)** |
| v. | ) | |
| | ) | |
| National Tobacco Company, L.P., | ) | |
| | ) | |
| Applicant. | ) | |
| | ) | |

| | | |
|---|---|---|
| Top Tobacco, L.P., | ) | |
| | ) | |
| Opposer | ) | |
| | ) | Opposition No. 91210176 |
| v. | ) | |
| | ) | |
| North Atlantic Operating Company, Inc., | ) | |
| | ) | |
| Applicant. | ) | |
| | ) | |

**NOTICE OF SERVICE OF SUBPOENA TO APPEAR AT DEPOSITION AND
PRODUCE DOCUMENTS**

PLEASE TAKE NOTICE THAT Applicants, National Tobacco Company, L.P., and North Atlantic Operating Company, Inc., pursuant to Rule 30 and Rule 45 of the Federal Rules of Civil Procedure, will serve non-party Craig Williamson, in his capacity as President of the Cigar Association of America, Inc., with the Subpoena attached hereto as Exhibit A, commanding him to appear for a deposition and to produce certain documents identified therein at the offices of KLEINFELD, KAPLAN AND BECKER, LLP, 1850 M Street, NW, Suite 800, Washington, DC 20036, on April 12, 2016, at 9:30 a.m.

Dated: April __, 2016

Respectfully submitted,

_____

Amy B. Berge
Elizabeth G. Powell
Joseph R. Dages
MIDDLETON REUTLINGER
401 South Fourth Street, Suite 2600
Louisville, Kentucky 40202
COUNSEL FOR APPLICANTS NATIONAL
TOBACCO COMPANY, LP AND NORTH
ATLANTIC OPERATING COMPANY, INC.
502-584-1135
aberge@middletonlaw.com
epowell@middletonlaw.com
jdages@middletonlaw.com

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing Notice of Service of Subpoena was served via U.S. Mail, postage prepaid, upon Antony J. McShane, NEAL, GERBER & EISENBERG, Two North LaSalle Street, Suite 1700, Chicago, Illinois 60602-3801, on this the __th day of April, 2016.

_____

Counsel for Applicants

2

# EXHIBIT F

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

National Tobacco Co., L.P., et al.,

**SUBPOENA IN A CIVIL CASE**

V.

Cigar Association of America, Inc.

Case Number:[1]

TO:   Cigar Association of America, Inc.
       1100 G Street, NW, Suite 1050, Washington, DC 20005

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   James William Woodlee, Kleinfeld, Kaplan and Becker, LLP 1850 M Street, NW, Suite 800, Washington DC 20036 | DATE AND TIME 4/12/2016 9:30 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A attached hereto.

| PLACE   James William Woodlee, Kleinfeld, Kaplan and Becker, LLP 1850 M Street, NW, Suite 800, Washington, DC 20036 | DATE AND TIME 4/12/2016 9:30 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT TO

# CAA SUBPOENA

ATTACHMENT TO AMENDED NOTICE AND SUBPOENA DUCES TECUM

EXHIBIT A

## INSTRUCTIONS AND DEFINITIONS

For purposes of the document requests, these Instructions and Definitions apply:

A.     If any responsive document requested hereunder is withheld under a claim of privilege, please produce a privilege log identifying: (a) the type of document withheld; (b) the author(s) of such documents; (c) the recipient(s) of such document; (d) the date of the document; (e) the current location of the document; and (f) the privilege claimed.

B.     The term "document" is used in a comprehensive sense and includes, without limiting the generality of its meaning, all written, typed, printed, recorded, digital, computer generated and/or retained, transcribed, filed, or graphic materials however produced, copied, or reproduced of any kind and description whether denominated as letters, correspondence, e-mail, telegrams, notes, recordings, contracts, reports, inter- or intra-office or personal memoranda (including those of meetings, conferences, and telephone communications), financial statements and records, balance sheets, profit and loss statements, bank statements, cancelled checks, property records, inventories, tax returns, tax worksheets, travel records, stenographic notes, Excel® or other computer spreadsheets, handwritten notes, diary or journal entries, desk entries, appointment books, photographs, motion pictures, computer printouts, contents of computer hard drives or disks or compact disks or flash drives or similar media, worksheets, catalogs, bills, requisitions, minute books, notebooks, files, slides, tapes, photostatic copies, negatives, microfilm, advertisements, fax or facsimile records, and other writings or physical images or depictions whatsoever in their nature.

## PRODUCTION OF DOCUMENTS

1.     Please provide a full and complete copy of any and all Cigar Association of America, Inc. documents reviewed and/or relied upon by you in preparing your expert report in the consolidated matter *Top Tobacco, L.P. v. National Tobacco Company, L.P. and North Atlantic Operating Company, Inc.*

2.     Please provide a full and complete copy of any and all Cigar Association of America, Inc. documents in your possession, custody, or control regardless of whether you relied upon those documents in preparing your expert report in the consolidated matter *Top Tobacco, L.P. v. National Tobacco Company, L.P. and North Atlantic Operating Company, Inc.*

EXHIBIT G

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| Top Tobacco, L.P., | ) | |
| | ) | |
| Opposer | ) | |
| | ) | Opposition No. 91203352 **(Parent Case)** |
| v. | ) | |
| | ) | |
| National Tobacco Company, L.P., | ) | |
| | ) | |
| Applicant. | ) | |
| —————————————— | ) | |

| | | |
|---|---|---|
| Top Tobacco, L.P., | ) | |
| | ) | |
| Opposer | ) | |
| | ) | Opposition No. 91210176 |
| v. | ) | |
| | ) | |
| North Atlantic Operating Company, Inc., | ) | |
| | ) | |
| Applicant. | ) | |
| —————————————— | ) | |

**NOTICE OF SERVICE OF SUBPOENA OF DESIGNATED 30(B)(6) WITNESS TO**
**APPEAR AT DEPOSITION AND PRODUCE DOCUMENTS**

PLEASE TAKE NOTICE THAT Applicants, National Tobacco Company, L.P., and North

Atlantic Operating Company, Inc., pursuant to Rule 45 of the Federal Rules of Civil Procedure,

will serve the non-party Cigar Association of America, Inc. (the "CAA") with the Subpoena

attached hereto as Exhibit A, commanding the CAA to designate an officer, director, managing

agent, or other representative to appear for a deposition and produce certain documents identified

therein to James William Woodlee at the offices of KLEINFELD, KAPLAN AND BECKER, LLP, 1850

M Street, NW, Suite 800, Washington, DC 20036, on or before April 12, 2016, at 9:30 a.m.

Dated: April __, 2016

Respectfully submitted,

_____

Amy B. Berge
Elizabeth G. Powell
Joseph R. Dages
MIDDLETON REUTLINGER
401 South Fourth Street, Suite 2600
Louisville, Kentucky 40202
COUNSEL FOR APPLICANTS NATIONAL
TOBACCO COMPANY, LP AND NORTH
ATLANTIC OPERATING COMPANY, INC.
502-584-1135
aberge@middletonlaw.com
epowell@middletonlaw.com
jdages@middletonlaw.com

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing Notice of Service of Subpoena was served via U.S. Mail, postage prepaid, upon Antony J. McShane, NEAL, GERBER & EISENBERG, Two North LaSalle Street, Suite 1700, Chicago, Illinois 60602-3801, on this the __th day of April, 2016.

_____

Counsel for Applicants

# EXHIBIT H

Mar 14 16 12:10p                                                                    p.1

# EXPERT REPORT OF NORMAN F. SHARP

**March 14, 2016**

## I.   Background

I have almost 40 years of experience in the field of association management having served with four trade associations consisting mainly of manufacturing companies. Most recently I served as president of the Cigar Association of America, Inc. (CAA) for more than 29 years – from August 1981 until my retirement on March 31, 2011. Established in 1937, the CAA is the national trade organization of cigar manufacturers, importers, distributors, cigar mail order firms, cigar leaf tobacco companies and other suppliers to the industry.

As president I was involved in government relations activities at the federal and state levels, the establishment of statistical reporting programs on taxable removals, net sales, sales by state, exports and imports, and public relations activities. My government relations experience included lobbying as well as working with agencies such as the U.S. Treasury Department's Alcohol and Tobacco Tax and Trade Bureau (TTB) and its predecessor the Bureau of Alcohol, Tobacco and Firearms (BATF), the Departments of Agriculture and Commerce, the U.S. International Trade Commission and the Federal Trade Commission.

In addition to serving as president of the CAA, I served concurrently as president of the Pipe Tobacco Council, Inc. (PTC) from its inception in 1988 until my retirement on March 31, 2011. Members of the PTC include manufacturers of pipe tobacco and roll-your-own cigarette tobacco as well as leaf tobacco suppliers.

Prior to my joining the CAA and the PTC, I served four years as director of membership services with the Outdoor Power Equipment Institute, the national trade association of manufacturers of consumer lawn and garden power equipment as well as major suppliers to the industry. Before that I spent six years with the Electronic Industries Association (EIA), the national association of manufacturers of consumer and industrial electronics, parts, solid state products, semiconductors, and government products. I joined EIA as assistant to the vice president of the Government Products Division then became director of Councils on International Trade,

2

Government Procurement Relations and Industrial Relations, and finally vice president of administration

I have a BA degree in history from the University of California and an MBA from George Washington University.

I have not previously testified as an expert in any deposition or trial. I have not authored any publications within the last 10 years. I am being paid at a rate of $750 per hour for my time in authoring this report and testifying as a witness. My compensation is not contingent on the outcome of these proceedings.

## II      Blunts, Blunting and Blunt Wraps

The word "blunt" has historically been used to describe a specific size and shape of cigar. The word "blunting" came about in the 1990s to describe the practice of cutting open a blunt-size cigar, replacing all or some of the filler tobacco with marijuana or some other illegal substance, and resealing the cigar. When smoked, the cigar tobacco masks the odor created from burning the illegal substance. Blunting eventually grew to encompass other sizes and shapes of cigars including flavored cigars.

A cigar generally consists of three parts: 1) the inside filler which is tobacco bound together by a leaf (either natural or manufactured) called 2) the binder which in turn is wrapped in another leaf (either natural or manufactured) called 3) the wrapper. "Manufactured tobacco" is also known as "homogenized tobacco leaf" as well as "reconstituted tobacco."

"Blunt wraps" first came to the attention of the CAA during the late 1990s. They were simply flavored binders or hollow tubes of manufactured binder in a package. They were not made by any traditional cigar company. They were sold without any accompanying tobacco and because of the way they were marketed it was widely believed throughout the industry that the sole purpose of the product was to smoke marijuana.

## III     Consumers Do Not Roll Their Own Cigars

In 2009, Congress enacted the Children's Health Insurance Program Reauthorization Act (CHIPRA) to be funded by dramatic increases in

tobacco taxes. Among other things, the legislation amended the definition of "roll-your-own tobacco" in the Internal Revenue Code of 1986 (26 U.S.C. 5702(o) in such a way as to include cigar wrappers. To the former definition of "roll-your-own tobacco" – "any tobacco which, because of its appearance, type, packaging, or labeling, is suitable for use and likely to be offered to or purchased by, consumers as tobacco for making cigarettes," – the words "or cigars, or for use as wrappers thereof" were added.

The CAA's main concern with the overall legislation was the magnitude of the tax increases on cigars. We were not concerned with the inclusion of roll-your-own cigar tobacco because there was no such product on the market nor was there any evidence that consumers preferred to roll their own cigars. There was no history of packaged cigar wrappers or packaged cigar tobacco being offered to consumers. Rather, the cigar wrapper was historically considered the outer leaf of the finished cigar. There was no doubt that the inclusion of cigar wrappers was aimed at blunt wraps, a relatively new product which never before had been taxed as a tobacco product or even defined as a tobacco product.

Based on my years in the industry and my knowledge of cigar history, there has never been any evidence of wrappers, binders and cigar filler tobacco being sold to consumers. There was simply no demand by consumers to roll their own cigars. In the case of premium, hand-made cigars this is obvious. It takes 18 to 24 months for workers to learn how to become skilled hand-rollers of fine cigars. They in essence become artisans who take long filler tobacco leaves from different countries, roll a natural tobacco binder leaf around them, apply the outer wrapper leaf and insert the cigar into a mold to form the particular style of cigar. In the process the roller uses a specialized rounded knife called a chaveta to trim excess tobacco and then applies a vegetable past to seal the head of the cigar (the part the consumer puts in his mouth). A skilled roller averages roughly 25 cigars an hour.

However, the vast majority of cigars sold in the U.S. today are made by machines that can turn out thousands of a **uniform product** per day. The manufacturer's cost – as well as the price to the consumer – is kept down by using chopped up short filler cigar tobacco and a manufactured leaf binder and either a natural leaf or manufactured wrapper. The consumer gets a

4

ready-made product that is cheaper, less demanding and more convenient
than rolling his own cigar. He doesn't have to spend the time and effort to
place loose cigar tobacco – if he can find any – on a manufactured binder
and try to roll it up and seal it using his tongue. A machine-made cigar has a
tapered end, a plastic or wood tip or a hole in the head to enable the
consumer to puff on the product. In addition it has been tested for draw to
assure that it is not rolled so tight that it is impossible for the consumer to
puff on it. If you roll your own cigar, how do you finish the head as to
prevent loose tobacco from getting in your mouth when you puff on it?
How do you assure the product is not rolled so tight as to prevent it from
being puffed?

But most importantly, what is the incentive for a consumer to roll his
own cigar given the availability of a tremendous variety of ready-made
products at a range of retail prices? As cigarette taxes grew over the years, it
made sense for some consumers to roll their own cigarettes. But this has
never been the case with cigars. For example, I recently went to a local
tobacco store and was struck by the fact that it had four facings of Zig-Zag
cigar wraps containing two wraps in a package selling for a dollar.
Immediately below was a wide assortment of two-packs of finished popular
price cigars with a broad assortment of flavors selling for $.99 per pack.
Thus, a consumer could buy a pack of two cigars already made or for the
same price buy a package containing two Zig-Zag cigar wraps but then have
to incur the additional price of purchasing the Zig-Zag cigar tobacco – if he
could find any -- and put in the time and effort to roll his own cigar. (I also
noted that at a nearby 7-11 store, a pack of three Zig-Zag cigarillos were on
sale for $.99.)

## IV.   CAA Policy Re:  Blunt/Cigar Wraps

Concerned that the marketing and sale of blunt wraps would denigrate
the imagine of cigars, the CAA in 2001 adopted the following policy to
guide the association in responding to inquiries from the media, government
officials at the federal, state and local levels and the public at large:

> The members of the Cigar Association of America
> deplore the current proliferation of products being sold
> as 'blunt wraps' and advertised as alternatives to

dissecting cigars 'to enjoy the advantage of smoking blunts'. There is no need for dissection in order to legitimately enjoy smoking any cigar.

'Blunt', like 'panatela', 'corona', 'cigarillo' and 'torpedo', among other terms, is, and has historically been, used as a front mark or descriptor by cigar manufacturers to indicate the size and shape of a specific style of product. By incorporating the word 'blunts', the traditional designation for a classic cigar shape, in the name of these products, the manufacturers suggest that their products have cigar-like properties. This is not the case.

THESE PRODUCTS ARE NOT CIGARS. They are not sold with filler tobacco so that purchasers can roll their own cigars. They are not a recognized tobacco product at all. They are not even marketed as an alternative to cigarette papers. One can only assume from the marketing materials that these products are being sold for a single purpose – for rolling illegal substances.

Then in March 2011, the CAA board of directors adopted the following policy to address "blunt/cigar wraps" and to ban membership in the association prospectively for companies engaged in the manufacture, marketing or sale of those products.

Since 2001, CAA's position regarding blunt/cigar wraps has been that they are not cigars, are not used to 'roll your own' cigars, and have no legitimate purpose. CAA believes that blunt/cigar wraps denigrate the image of cigars and that the manufacture, advertising, marketing, promotion or sale of blunt/cigar wraps is inimical to the best interests of the CAA and the cigar industry.

6

CAA herby reaffirms its position on blunt/cigar wraps. In order to protect the interests of CAA and the cigar industry, CAA will no longer accept as members any person, firm or entity engaged in the manufacturing, advertising, marketing, promotion or sale of blunt/cigar wraps to the consuming public, notwithstanding that the person, firm or entity may otherwise qualify for membership.

## V.   NTC's Cigar Wraps

National Tobacco Company (NTC) joined the CAA as an associate member in 2008. The company was eligible for membership through its earlier purchase of Fred Stoker and Sons, which had a mail order business selling tobacco products, including cigars. If there had been any indication the company was selling cigar wraps at that time, its application for membership would likely have been disapproved. It has remained a member of the association because the policy adopted in 2011 did not extend to removing current members.

### a.   Imports of Cigar Wraps

According to their packaging, National Tobacco's cigar wraps are made in the Dominican Republic under the authority of National Tobacco Company, L.P. They are likely imported into the U.S. under Chapter 24 (Tobacco) of the Harmonized Tariff Schedules of the U.S. – specifically under HTS 2403.9120 ("Homogenized" or "reconstituted" tobacco suitable for use as wrapper tobacco.)

According to data obtained on-line from the U.S. International Trade Commission's Trade DataWeb (see Exhibit 1), in the five-year period 2011 – 2015 a total of 1.004 million kilograms valued at $98 million were imported from the Dominican Republic under the above tariff classification. That averages out to 200,747 kilograms per year with an average value of $19.6 million. It cannot be determined how much of this was production of Zig-Zag cigar wraps.

### b. Zig-Zag Cigar Blend Pipe Tobacco

Few stores carry Zig-Zag roll-your-own cigar tobacco. Recently I checked with tobacco shops in Northern Virginia to find out 1) how many sold Zig-Zag cigar wraps and 2) how many sold Zig-Zag cigar blend pipe tobacco or Zig-Zag cigar blend tobacco. Of the 40 stores contacted, 13 sold the cigar wraps. None sold the cigar blend tobacco.

This confirms what the CAA learned in 2010 when it was informed that one of the largest tobacco distributors in California – Pitco Foods – carried Zig-Zag cigar blend pipe tobacco when it added Zig-Zag wraps, but subsequently dropped the tobacco because it wasn't selling. However, they did continue to carry the wraps. At that time, in a 12-state area covering much of the western U.S., while the overwhelming majority of distributors carried the wraps, only 15% to 20% of them were carrying the tobacco. It is noteworthy that in a submission to the legislature in California in 2010 (see Exhibit 2, page 2) NTC stated, "It is conservatively estimated that approximately 15 million make-your-own cigar wraps are sold in the state of California." However, it provided no estimate on the sale of roll-your-own cigar tobaccos.

Packages of Zig-Zag cigar wraps carry one of the Surgeon General's warnings – referred to as the "legally required cigar health warnings" cited in NTC's favorable ruling from Customs and Border Protection in 2009. However, this is misleading because the rotating federal warnings are required only on those cigars made by the seven companies that signed a Consent Decree with the Federal Trade Commission in June 2000. None of the cigar wrap companies were among the seven.

In addition, these warning labels apply only to products that meet the very specific federal definition of a cigar, which is: "any roll of tobacco wrapped in leaf tobacco or wrapped in any other substance containing tobacco (other than any roll of tobacco which is a cigarette . . . )". Cigar wraps do not meet that definition. The warnings on cigar wrap packages are there in an attempt to legitimize the product. Companies such as National Tobacco are seeking to benefit from the warning labels without shouldering any of the obligations of the original signers.

8

## VI.    Conclusion:  Consumers Do Not Roll Their Own Cigars

Based on my years in the industry and my knowledge of cigar history, there is no evidence that consumers roll their own cigars.  Nor am I aware of any evidence showing a legitimate usage of cigar wraps.  One only need to go on the Internet to discover that blunt/cigar wraps are being sold and bought for using marijuana or other drugs.

Furthermore, it is my opinion that National Tobacco sought to legitimize its blunt wraps by trying to associate them with legitimate cigars. The company did this in 2008-2009 by

1.    labeling its blunt wraps as "cigar wraps," a product hitherto unknown in the cigar industry, and

2.    placing the Surgeon General health warning labels on its packages of cigar wraps even though it never entered into the Consent Decree between the major cigar manufacturers and the Federal Trade Commission.

In my opinion cigar/blunt wraps, including ZigZag branded "cigar wraps," should be considered drug paraphernalia.


Signed: _Norman F. Sharp_

Dated:  March 14, 2016

Norman F. Sharp
1304 Key Drive
Alexandria, VA 22302

# Exhibit 1

# 24039120: Customs Value by Country Name and Customs Value for ALL Countries

## U.S. Imports for Consumption

## Annual Data

| Country | HTS Number | 2011 | 2012 | 2013 | 2014 | 2015 | Percent Change 2014 - 2015 |
|---------|-----------|------|------|------|------|------|-----------|
| | | | | *In Actual Dollars* | | | |
| Customs Value where quantities are collected in kilograms | | | | | | | |
| Dominican Rep | 24039120 "Homogenized" or "reconstituted" tobacco suitable for use as wrapper tobacco | 20,433,538 | 18,734,229 | 17,956,692 | 19,948,963 | 20,802,022 | 4.3% |
| India | 24039120 "Homogenized" or "reconstituted" tobacco suitable for use as wrapper tobacco | 0 | 0 | 51,494 | 0 | 0 | N/A |
| Indonesia | 24039120 "Homogenized" or "reconstituted" tobacco suitable for use as wrapper tobacco | 0 | 0 | 161,950 | 1,184,516 | 1,021,559 | -13.8% |
| Mexico | 24039120 "Homogenized" or "reconstituted" tobacco suitable for use as wrapper tobacco | 4,732,563 | 4,420,582 | 3,469,656 | 4,359,779 | 4,693,661 | 7.7% |
| **Subtotal kilograms** | | 25,166,101 | 23,154,811 | 21,639,792 | 25,493,258 | 26,517,242 | 4.0% |
| **Total** | | 25,166,101 | 23,154,811 | 21,639,792 | 25,493,258 | 26,517,242 | 4.0% |

# 24039120: First Unit of Quantity by Country Name and Customs Value for ALL Countries

## U.S. Imports for Consumption

## Annual Data

| Country | HTS Number | 2011 | 2012 | 2013 | 2014 | 2015 | Percent Change 2014 - 2015 |
|---------|-----------|------|------|------|------|------|---------------------------|
| | | | | *In Actual Units of Quantity* | | | |
| First Unit of Quantity where quantities are collected in kilograms | | | | | | | |
| Dominican Rep | 24039120 "Homogenized" or "reconstituted" tobacco suitable for use as wrapper tobacco | 227,932 | 185,502 | 175,280 | 201,131 | 213,889 | 6.3% |
| India | 24039120 "Homogenized" or "reconstituted" tobacco suitable for use as wrapper tobacco | 0 | 0 | 4,681 | 0 | 0 | N/A |
| Indonesia | 24039120 "Homogenized" or "reconstituted" tobacco suitable for use as wrapper tobacco | 0 | 0 | 16,982 | 108,619 | 93,110 | -14.3% |
| Mexico | 24039120 "Homogenized" or "reconstituted" tobacco suitable for use as wrapper tobacco | 85,790 | 87,624 | 79,263 | 113,997 | 99,988 | -12.3% |
| **Subtotal kilograms** | | 313,722 | 273,126 | 276,206 | 423,747 | 406,987 | -4.0% |

Sources: Data on this site have been compiled from tariff and trade data from the U.S. Department of Commerce and the U.S. International Trade Commission.

# Exhibit 2



May 5th, 2010

The Honorable Felipe Fuentes
Chair
Assembly Committee on Appropriations
Room 2114
State Capitol
Sacramento, CA. 95814

Dear Chairman Fuentes,

**RE: AB 2757 Limiting the Sale of Cigar Wraps at Adult Only Facilities**

**Position: OPPOSE**

**Company: National Tobacco Company ('NTC')**

**Fiscal Impact: $9.1 million**

National Tobacco Company ('NTC') is an established manufacturer of tobacco products. NTC sells smokeless, roll-your-own cigarette tobacco, cigarette papers, pipe tobacco's moist snuff and machine made cigars and make-your-own cigar products. The company sells products under the Beechnut®, Zig-Zag® and Stoker® brand families.

NTC is a member of numerous national trade associations, including The Cigar Association of America, The Pipe Tobacco Council, The Council of Independent Tobacco Manufacturers of America, The National Association of Tobacco Outlets, and its officers serve on the Board of Directors of many of these trade organizations.

By way of background, NTC is a registered manufacturer with the Federal Tobacco Tax and Trade Bureau (TTB), a bonded and authorized importer for all of its tobacco products with US Customs and is registered to sell its products in all 50 states, including California. With its long-established reputation in the industry, NTC has worked on numerous federal and state tobacco compliance issues, including with the California Attorney General on recently proposed enforcement legislation related to the Master Settlement Agreement. NTC has offered numerous amendments to AB 2757 that would strengthen enforcement of retail sales of cigar wraps and that would compel retailers to positively age verify at point of sale any purchaser that appears 27 years or younger to ensure the purchaser meets the California's legal age to purchase tobacco products.

The following information is provided by NTC in an effort to provide some indication of the fiscal impact of limiting the retail sales of legal make-your-own cigars to a handful of retail tobacco outlets in the state, and to correct many false statements and misperceptions offered by its competitors who are seeking to

gain a direct business advantage by advocating narrow retail sales legislation impacting make-your-own cigar products under the guise that these products are allegedly drug paraphernalia.

Certain large machine-made cigar competitors are attempting to hijack the legislative process in an effort to impede a growing make-your-own cigar business that has already passed muster with the US TTB and US Customs. The make-your-own cigar market is already regulated in California under the provisions of STAKE, and enforcement already takes place in limiting sales of these products to minors. NTC however believes enforcement can be strengthened without adding fiscal burdens to the state and without creating the potential of a large illicit market in make-your-own cigar products sales through non-licensed retailers with no BoE enforcement oversight.

While NTC has always supported broad-based legislation that limits youth access to all tobacco products, AB2757 proves the exception, given that the provisions of this legislation unfairly restricts sales of NTC make-your-own cigar products to a mere handful of the 38,000 licensed retail tobacco outlets in California, to only those that limit access to adults 18+. This legislation will have numerous and significant fiscal impacts on the State, and have the effect of driving sales of its products into undesirable locations that will foster an illicit trade in legitimate make-your-own cigar wraps and side-step BoE enforcement efforts on tobacco products.

**With regard to fiscal implications, NTC believes the total potential fiscal impact for the state is in excess of $9 million.**

### Conservative FISCAL IMPACT TOTAL of $9.1 million in direct and lost excise tax opportunity

- **$1.36 million loss is sales taxes (at a rate of 8.25%)**
  It is conservatively estimated that approximately 15 million make-your-own cigar wraps are sold in the state of California. With an estimated retail price of $1.10 per unit, the state would lose estimated sales taxes in excess of $1.4 million if the universe of retail outlets allowed to retail this product were reduced to only a few hundred stores.

- **$1.5 million in lost sales and job opportunity for distributors**
  There are two main-line distributors of make-your-own cigar wraps based in California that also service the entire US market. The loss of 10% of total shipments to California will impact approximately $1.0 million in direct sales plus warehouse employment losses for these distributors in excess of $0.5m annually. This will further impact direct employment and other income and corporate taxes in the State.

- **$250,000 in sales job losses at NTC**
  NTC employs 7 sales representatives in California. Two of these positions are dependent on NTC sales in the make-your-own cigar segment. NTC estimates the direct and indirect employment benefits of these positions to California to be in excess of $250,000 annually.

- **$1.0 million estimated loss is S-CHIP matching funds from the Federal government**
  In April 2009, by direction of the US Congress, and as a requirement of funding the State Child Health Insurance [Reauthorization] Program (S-Chip), cigar wraps became subject to federal excise taxes at rate of $24.78 per pound. Given that California represents approximately 10% of the total make-your-own cigar market, the loss of this market, and the consequential reductions in collections at the federal level could lead to a reduction of S-CHIP funding of up to $1.0 million for California.

- **$5 million in lost excise tax opportunity**
  NTC has been advocating for a change to the 50% tobacco content rule that determines whether a tobacco product attracts an excise tax in California. If the make-your-own cigar market were to be taxed through a tax parity rule change, the tax windfall opportunity for the state would be around $4.9 million annually. Again, with an estimated 15 million make-your-own cigars sold in the state of California, sold at an average wholesale price of $0.80 cents per unit, applying the 41.1% excise tax to these products would raise approximately $0.328 per unit, for an annual revenue gain for the state of $4.92 million.

Here are some other important relevant facts relating to NTC make-your own cigar wraps, that corrects the misinformation being circulated by The Cigar Association of America and others:

1.  **The Federal Government Has Determined that NTC's Cigar Wraps Are Not Drug Paraphernalia.**

The U.S. Department of Homeland Security's Customs and Border Protection Division ("Customs") fully evaluated NTC's Zig-Zag® cigar wrap products as well as the broad cigar marketplace in which NTC competes. On November 6, 2009, Customs ruled that Zig-Zag® "cigar wraps at issue are not 'primarily intended or designed for use' with drugs, and therefore do not constitute drug paraphernalia as defined in 21 U.S.C. § 863." The Ruling concluded: "A consideration of the logically relevant factors listed in 21 U.S.C. § 863(e) reveals that the cigar wraps are not primarily intended for use with illicit substances." (The Ruling can be found on-line at http://rulings.cbp.gov/index.asp?ru=h064259&qu=zig+zag&vw=detail.)

To the best of National's knowledge, there are no domestic manufacturers of cigar wraps. Hence, any like products which have been rejected by Customs will already be barred from entry into the U.S. and should not be available in California. If such products are being sold in California, BoE should be able to act on such products from an enforcement perspective.

2.  **The US Department Treasury, Tobacco Tax and Trade Bureau (TTB) Expressly Includes 'Cigar Wrappers' in its product Definition of a Roll-Your-Own cigar tobacco.**

The legitimacy of "cigar wrappers" as a lawful product in a lawful market is underscored by their treatment by the US Tobacco Tax and Trade Bureau ("TTB") which ruled that "a consumer-ready cigar wrapper (or "blunt wrap") is subject to tax as roll-your-own tobacco." (See TTB Ruling 2009-1, April 23, 2009, and amended definition located at http://www.ttb.gov/tobacco/amended-definition.shtml and http://www.ttb.gov/rulings/2009-1.pdf)

3.  **48 States, other than California and Alabama Tax Cigar Wraps as a Legal Tobacco Product.**

The excise tax rates on make-your-own cigar wraps in various states are generally based on a percentage of manufacturer list price or on wholesale list price. California must address the taxation of these products in order to ensure better enforcement of these products at tobacco retail by BoE.

4.  **NTC Markets its Cigar Wraps In Traditional Trade Industry Publications.**

4

NTC markets its make-your-own cigar wrap products through various traditional trade industry publications. Further, NTC's trade industry advertisements instruct potential wholesale and retail buyers to "USE WITH ZIG-ZAG PIPE TOBACCO CIGAR BLEND."

**5.    NTC Markets Its Own Pipe Tobacco Cigar Blend with its Cigar Wraps.**

Customs determined that NTC's cigar wraps are not drug paraphernalia based in part on the fact that National markets its cigar wraps with its pipe tobacco cigar blend. "**The corresponding packaging creates a strong association between the two items that indicates to the consumer that the cigar wraps and the pipe tobacco are meant to be used together.**" (See http://rulings.cbp.gov/index.asp?ru=h064259&qu=zig+zag&vw=detail) Importantly, each of National's cigar wrap cartons and packages clearly instruct the retailer and purchaser to "TRY ZIG ZAG CIGAR BLEND TOBACCO."

**6.    NTC Does Not Market Cigar Wraps Directly to Consumers.**

NTC does not engage in direct consumer marketing or other promotions with its cigar wrap products. NTC does not use cartoon or other imagery designed to attract minors. NTC does not give consumer vouchers for this product. NTC does not market cigar wraps via hats, t-shirts, etc. The only marketing which could be construed to be directed to consumers is NTC's Zig-Zag® website. However, even the website markets cigar wraps *in conjunction with* the cigar blend tobacco: "For use with our CIGAR BLEND TOBACCO." Further, NTC only provides a link to its cigar blend tobacco on its cigar wraps page, not on its tobacco page. (See. www.zigzag.com )

**7.    NTC Competes in a Legitimate Tobacco Products Business.**

NTC and its predecessor companies have been in the tobacco business for over 100 years. NTC is a federally licensed importer, manufacturer, and state licensed manufacturer and distributor of tobacco products. All of National's tobacco products, including cigar wraps, are sold through licensed state tobacco distributors and should be sold through licensed tobacco retailers. Based upon such facts, Customs also ruled that, "**the record provides ample evidence that NTC is engaged in the legitimate tobacco products business.**" Further, independent websites market cigar wraps alongside other traditional tobacco products. (See: http://www.ryomagazine.com/winter2004/papers.htm, http://www.maintobacco.com/products/tobacco.htm, http://www.ryomagazine.com/winter2003/papers.htm, http://www.ryomagazine.com/papers.htm)

**8.    Cigar Wraps Are A Low Cost Cigar Alternative for Adult Consumers.**

Contrary to competitor assertions, NTC's products compete for adult smokers in the RYO and cigar marketplace. NTC's products allow consumers to create single rolled cigars that compete against machine made single cigars and multi-pack machine-made cigars offered by larger industry competitors. Consumers can choose NTC's products at a significant cost savings over machine made cigars. This is the primary factor that raises the competitive concerns of the large machine made cigar companies who are losing share to make-your-own cigar wraps).

**9.    The Prevalence of the Roll Your Own (RYO) Cigar Industry Can Be Found in Various Online Sources.**

Examples of the growing popularity of RYO cigars can be found online at You Tube:
http://www.youtube.com/watch?v=lkj-NgL09LI
http://www.youtube.com/watch?v=lX4Kx2WinWo&feature=related

NTC will be pleased to provide additional information to the Committee and will appear at the next Appropriations Committee meeting to offer additional comment and answer questions.

    Respectfully

    Ron Tully
    Vice President

# EXHIBIT I



# Cigar Association Of America, Inc.

  

Search

# Message From The President



As the national trade organization of cigar manufacturers, importers and distributors as well as major suppliers to the industry, the Cigar Association of America has been involved with legislative and regulatory issues in the U.S. for more than three-quarters of a century.

I'm proud to be part of that history and energized to be leading CAA at this time in our history.

These are challenging times for our members and our customers and we've given CAA members only one expectation – that we will be fighting for them 24/7 in Washington and across the country. Whether you are a CAA member or a lover of the leaf or believe as most Americans do that enjoyment of cigars is an adult choice that should be protected, check back on our website frequently for the latest news and information.

Thank you.

*Craig Williamson, Cigar Association of America*

 **Cigar Association of America, Inc.**

**Share** ☐ ☐ ☐ ☐ ☐ ☐ ☐

**About**    **Legislative Info**    **News**    **All About Cigars**    **Political Action**    **Log in**

1100 G Street, NW, Suite 1050, Washington, DC 20005-7405
Phone: (202) 223-8204 | Fax: (202) 833-0379 | Contact Us

Copyright © 2016 by Cigar Association of America, Inc.. All rights reserved.
Privacy Statement | Terms of Use

Site by Smith Consulting

EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| National Tobacco Company, L.P.,<br>North Atlantic Operating Company, Inc.<br><br>Plaintiffs, and Applicants in Consolidated<br>Opposition No. 91203352<br><br>v.<br><br>Norman F. Sharp<br>1304 Key Drive<br>Alexandria, VA 22302<br><br>Craig Williamson<br>President, Cigar Association of America, Inc.<br>1100 G Street, NW, Suite 1050<br>Washington, DC 20005<br><br>Cigar Association of America, Inc.<br>1100 G Street, NW, Suite 1050<br>Washington, DC 20005<br><br>Third Party Deponents in Consolidated<br>Opposition No. 91203352 before the<br>United States Trademark Trial and<br>Appeal Board | )<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**[PROPOSED] ORDER GRANTING
APPLICATION FOR ISSUANCE OF SUBPOENAS
PURSUANT TO 35 U.S.C. § 24**

Upon the Application of National Tobacco Company, L.P. ("NTC"), and North Atlantic Operating Company, Inc. ("NAOC"), Applicants in Opposition No. 91203352, styled *Top Tobacco, L.P. v. National Tobacco Company, L.P. and North Atlantic Operating Company, Inc.*, currently pending before the United States Trademark Trial and Appeal Board (the "Board") (the "Opposition"), pursuant to 35 U.S.C. § 24 for the issuance of subpoenas in support of the Board in the Opposition (the "Application"), and the Court having considered the Application and being

otherwise duly and sufficiently advised;

      **IT IS HEREBY ORDERED** that the Clerk of Court shall **FORTHWITH ISSUE** the following subpoenas to be served by the Applicants through the United States Mail and electronic mail:

    i.    the Subpoena *duces tecum* for Norman F. Sharp, attached as Exhibit A to the Application;

    ii.   the Subpoena *duces tecum* for Craig Williamson, President of the Cigar Association of America, Inc., attached as Exhibit D to the Application;

    iii.  the Subpoena *duces tecum* for the 30(b)(6) deposition of the Cigar Association of America, Inc., attached as Exhibit F to the Application.

**IT IS SO ORDERED.**

_____

United States Judge

Dated: April __, 2016

Tendered by:

*James William Woodlee*

James William Woodlee (D.C. Bar No. 996877)
KLEINFELD, KAPLAN AND BECKER
1850 M Street, NW, Suite 800
Washington, DC  20036
202-223-5120
wwoodlee@kkblaw.com

and

/s/ Amy B. Berge

_____

Amy B. Berge
Elizabeth G. Powell
Joseph R. Dages
MIDDLETON REUTLINGER
401 South Fourth Street, Suite 2600
Louisville, Kentucky 40202
COUNSEL FOR APPLICANTS
NATIONAL TOBACCO COMPANY, LP AND
NORTH ATLANTIC OPERATING COMPANY, INC.
502-584-1135
aberge@middletonlaw.com
epowell@middletonlaw.com
jdages@middletonlaw.com